## DETROIT TRUST CO. *v.* HUNRATH.

1. INTERPLEADER—DEFINITION—NATURE.
   A bill of interpleader is a bill filed for the protection of a person from whom several persons claim, legally or equitably, the same thing, debt, or duty, but who has incurred no independent liability to any of them, and does not himself claim an interest in the matter.

2. SAME—LANDLORD AND TENANT—LEASES.
   A landlord, who leased premises and subsequently made a second lease, subject to the first, providing that the subsequent lessee should have possession on default of the first, may not maintain a bill of interpleader against the tenants because the subsequent lessee claims that the prior tenant has violated the terms of his lease by subletting without stipulated written consent of the landlord.

3. SAME—DESCENT AND DISTRIBUTION—PARTIES.
   The guardian of one of the landlord's heirs has no greater right to file such bill than had the ancestor.

4. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS—BILL OF PEACE—ADEQUATE REMEDY AT LAW.
   Nor may a landlord, who has successively leased the same premises to different persons, compel them to answer a bill in equity on the ground that it would avoid a multiplicity of suits.

5. SAME—GUARDIAN AND WARD—INSTRUCTIONS OF COURT.
   Nor is the guardian of one of the heirs succeeding to an interest in such premises entitled to litigate the rights of the respective tenants as joint defendants in equity, on the theory that such guardian is entitled to instructions from the court.

Appeal from Wayne; Hosmer, J. Submitted February 24, 1911. (Docket No. 164.) Decided May 8, 1911. Rehearing denied March 30, 1912.

Bill of interpleader by the Detroit Trust Company, as guardian of Alvin J. Beller, against Otto Hunrath, the State Street Land Company, Louis M. Knauss, Anna P.

Beller, Jessie B. Haldi, Marion B. Rennie, Alexander Beller, and Frederick Beller. From a decree sustaining a demurrer to complainant's bill, it appeals. Affirmed.

*Beaumont, Smith & Harris* and *Charles F. Delbridge* (*Orla B. Taylor,* of counsel), for complainant.

*Stevenson, Carpenter & Butzel* (*Alex. J. Groesbeck,* of counsel), for defendant Hunrath.

*Henderson, Martindale & Grose,* for defendants Beller.

*Richard G. Kirchner,* for defendant State Street Land Company.

HOOKER, J. The complainant's bill alleges that Jacob Beller made several leases of certain premises which came to the ownership of one Knauss. Apparently these are not important. It also alleges an agreement between Beller and Knauss made November 10, 1900, reciting the making of a lease of the same day to Knauss, and the holding of the premises by Richter under a lease to him expiring in 1910, the actual occupancy of the premises by Knauss under an agreement with Richter, and providing other and new covenants as to repair. The bill alleges, further, that in 1904 Otto Hunrath bought the interest of Knauss in the leases and premises under an agreement in writing and has paid rent to Beller; that said leases to Richter and the extension thereof expired May 1, 1910. It is alleged, further, that on June 6, 1907, Jacob Beller and wife made a written contract with some men named Moebs agreeing to sell to them the premises, subject to the "conditions of the leases and agreements," copies being attached, and—

"Subject also to whatever rights one Otto Hunrath, an occupant of said premises, may have therein by virtue of a sublease from said Knauss or otherwise; it being understood and agreed that said parties of the first part have not consented in writing to the sublease or assignment to said Hunrath of the leases herein referred to; and said

first parties agree forthwith after the full payment by the said second parties of the purchase money at the time and in the manner hereinafter mentioned, and the performance of all the conditions herein specified to be both done and performed, to execute and cause to be executed and delivered a good and sufficient warranty deed for the said premises, and also to deliver or cause to be delivered to the said parties of the second part, their heirs, executors, administrators, or assigns, possession of the said premises on the first day of May, A. D. 1920, free and clear from all liens, incumbrances, leases, taxes, both ordinary and extraordinary and any and all other claims upon said property." Also:

"It is further mutually agreed that in case default shall be made in any of the covenants of any of the leases or agreements hereinbefore referred to, by the respective lessees, or their heirs, personal representatives or assigns, then said parties of the first part shall immediately take possession of said premises and shall immediately execute a lease thereof to the parties of the second part for the unexpired portion of the term of the lease, or leases, so in default, said lease to be upon the same terms and conditions as those contained in the lease or leases so in default, and to deliver the possession of said premises to said parties of the second part under said lease. And said parties of the second part agree to immediately execute such lease or leases for said unexpired term, as lessees, and to perform all the terms and conditions thereof on their part to be performed as such lessees."

Jacob Beller having died on June 12, 1909, William and George Moebs, the vendees, assigned to the State Street Land Company. The bill alleges that an agreement was made on April 13, 1910, between all of the defendants, except Knauss and Hunrath, being then the wife and children of Beller, and the complainant, as guardian of Alvin J. Beller, a minor grandchild of Beller, whereby the complainant was constituted and appointed guardian of said minor for purposes set forth in the agreement, some of which are stated therein; the agreement not being set forth in the bill or record.

The purposes stated are the collection by the complainant of the rents, interests, and income to become due upon

certain leases, note, and contracts including those herein-before mentioned, and, after compensating itself, dividing the remainder between the other parties to that agreement. The estate of Beller has been probated, and the residue of the estate assigned by an order of the probate court. The bill alleges, further, that the State Street Land Company now claims to be owner of the premises, and on May 14, 1910, served on complainant as agent the following notice:

"DETROIT, MICHIGAN, May 13, 1910.
"DETROIT TRUST COMPANY, Agent,
"Detroit, Michigan.
"*Gentlemen:*

"The State Street Land Company hereby gives you as agent of and for the heirs of Jacob Beller notice and demands: That said heirs of Jacob Beller take possession of and execute a lease of the premises described in a certain land contract entered into on the sixth (6) day of June, A. D. 1907, between Jacob Beller and Anna Paulina Beller, his wife, parties of the first part, and William D. C. Moebs and George Moebs, parties of the second part, according to the terms of said contract.

"Very truly yours,
"STATE STREET LAND COMPANY,
"By W. BROOKS.'

It alleges further:

"That said State Street Land Company avers that, by the terms of the lease to Louis M. Knauss, said Louis M. Knauss could not sell, assign, or transfer the same without written consent of Jacob Beller. That such written consent was never given. That said Louis M. Knauss has executed an assignment of said lease and delivered possession to Otto Hunrath. That said Otto Hunrath is now wrongfully in possession of said premises. That by the terms of the contract of sale from Jacob Beller and wife to William D. C. Moebs and George Moebs, being Exhibit F hereto attached, said widow and heirs at law of said Jacob Beller are bound to evict said Otto Hunrath and take possession of said premises and execute a lease thereof to said State Street Land Company as assignee of said William D. C. Moebs and George Moebs according to the terms of said contract (Exhibit F), and said State Street Land Company, having served the foregoing notice

upon the Detroit Trust Company as agent of said widow and heirs at law of said Jacob Beller, deceased, now threatens to sue said widow and heirs at law for damages for breach of the terms of said contract (Exhibit F), provided said widow and heirs at law do not at once evict said Otto Hunrath and take possession of said premises, and execute a lease thereof to said State Street Land Company.

"(21) That on or about the 28th day of April, A. D. 1910, said Otto Hunrath delivered to said Detroit Trust Company as agent for said widow and heirs at law of said Jacob Beller, deceased, a check for the sum of six hundred sixty-six and $\frac{67}{100}$ dollars ($666.67) as rent for said premises from May 1, 1910, to June 1, 1910.

"(22) That on the 30th day of April, A. D. 1910, said Detroit Trust Company as such agent returned said check to said Otto Hunrath, together with a letter in the words and figures following:

"'April 30, 1910.

"'Trust No. 808.
"'Mr. OTTO HUNRATH,
            "'11 State St.,
                "'Detroit, Michigan.

"'Dear Sir:

"'We have your letter of April 28th, 1910, enclosing check to our order as agent for the sum of $666.67, intended as rental of the premises occupied by you from May 1st, 1910, to June 1st, 1910. We also have a proposed surety bond signed by Julius Stroh to insure the performance of the terms of a certain lease executed on November 10, 1900, between Jacob Beller and Louis M. Knauss, and which lease you now claim to own. The authority received by us from all the members of the Beller family, of which you have had notice, authorizing us to collect rent, is not broad enough to permit us to accept this rent in such a manner as to recognize any rights you may have under the lease above referred to. Under the terms of the agency agreement referred to we would not have power to bind the members of the family.

"'We, therefore, return herewith the surety bond and the check and must decline to accept the same until we have been so instructed by the various parties in interest. It will be impossible to get instructions in less than three weeks by reason of the fact that Mrs. Haldi resides in British Columbia. We will, however, immediately correspond with all the parties in interest and obtain instructions from them at as early a date as possible as to what they wish to have done in the premises.

" 'As guardian of Alvin J. Beller, a minor, we shall also have to present the matter to the probate court for instructions.

" 'The fact that you are allowed to remain in possession while we are obtaining instructions from all of the members of the Beller family is not to be considered in any way as a consent to your holding over, or a waiver of any of their rights.

" 'Yours respectfully,

" 'DETROIT TRUST COMPANY,

" 'J. A. B., Asst. Secretary.'

" (23) That thereafter said Otto Hunrath again delivered to said Detroit Trust Company said check for said May rent.

" (24) That thereafter said Detroit Trust Company as such agent communicated with said widow and heirs at law of said Jacob Beller, deceased, but was unable to obtain authority from the widow and heirs at law of said Jacob Beller, deceased, to accept said rent from said Otto Hunrath in such a manner as to recognize any rights which he might have under the leases above referred to.

" (25) That on or about the 31st day of May, A. D. 1910, said Otto Hunrath delivered to said Detroit Trust Company as agent for said widow and heirs at law of said Jacob Beller, deceased, a check for the sum of six hundred sixty-six and $\frac{67}{100}$ dollars ($666.67) as rent for said premises from June 1, 1910, to July 1, 1910, and this complainant is informed and believes, and therefore charges the fact to be, that said Otto Hunrath will continue from month to month to tender said rent for said premises to said Detroit Trust Company as such agent.

" (26) That said Otto Hunrath avers that he is the owner of the lease (Exhibit D) by assignment thereof from said Louis M. Knauss, and that by virtue thereof he is entitled to the possession of said premises until May 1, 1920.

" (27) That this complainant is unable to determine whether said State Street Land Company or said Otto Hunrath, or either of them, is correct in its or his claims, and complainant fears that by recognizing the claims of one, or by authorizing said Detroit Trust Company as such agent to recognize the claims of one, it will lay itself or its minor ward, Alvin J. Beller, legally liable to damages to the other.

" (28) That this complainant represents to this court that on behalf of Alvin J. Beller, its minor ward, it is and

always has been ready and willing to accept the proffered rent from said Otto Hunrath or to authorize said Detroit Trust Company as such agent on behalf of said minor heir to accept said rent from said Otto Hunrath, and to recognize his tenancy of said premises and his right of possession thereof under said leases and the assignment thereof or on behalf of said Alvin J. Beller, a minor, to take or authorize the necessary proceedings to be taken for the regaining of possession of said premises from said Otto Hunrath, and to execute on behalf of said minor a lease of said premises to said State Street Land Company as provided for in the above-mentioned land contract between said Jacob Beller and wife and said William D. C. and George Moebs, but fears that without the order of this court, after a just and fair interpleading of the various parties in interest so that their rights in connection therewith may be determined, that either action would lay this complainant or its minor ward liable for damages, but this complainant stands ready and willing to do and perform such things in regard thereto as shall by this court be deemed lawful and proper upon the determination of the various claims and interests of the parties made defendants hereto.

"(29) Complainant further represents that it does not in any respect collude with either of the said named defendants touching the matters in controversy in this cause, nor is it in any manner indemnified by the defendants or either of them, nor has it exhibited this its bill of interpleader at the request of the defendants or either of them, but merely at its own free will and to avoid being molested, vexed, and harassed touching the matters contained herein and to avoid being held liable for damages, either personally or as guardian of said minor liable to damages, and that the order of this court may be obtained so that complainant may properly and safely perform its trust as guardian of said minor.

"(30) That the amount involved in said controversy is more than $100 and that complainant has no full, complete, and adequate remedy at law, and therefore prays for the following relief in equity."

The bill prays:

"(a) That the above-named defendants appear and answer this bill of complaint, but not under oath; their several answers under oath being hereby expressly waived.

"(*b*) That the defendants may severally set forth their various claims in connection with the matters set forth in the foregoing bill of complaint, and how in particular they make out their said claims.

"(*c*) That the defendants may interplead and settle and adjust their said demands between themselves, complainant being willing and desirous and agreeing to abide by the determination of this court in respect thereto and to recognize the claims of whichever defendant this court shall deem are right and lawful.

"(*d*) That the rights of all parties hereto be adjudicated by this court and that this complainant be instructed by this court as to his duties in connection with the matters involved in this controversy, so that complainant may properly and safely perform its trust as guardian of said Alvin J. Beller, a minor.

"(*e*) That if the court should find that Otto Hunrath was not rightfully in possession of said premises known as Nos. 11 and 13, State Street, Detroit, Mich., then that said Otto Hunrath may be decreed to vacate, give up, and surrender the possession of said premises to the complainant as guardian of said Alvin J. Beller, and to the other heirs of said Jacob Beller, deceased, and that a decree may be entered canceling the lease of said premises from said Jacob Beller to Louis M. Knauss, the term of which said lease extends from May 1, 1910, to April 30, 1920, or the assignment thereof from Louis M. Knauss to said Otto Hunrath, or both such lease and assignment, and that said Otto Hunrath and said Louis M. Knauss be required to pay to complainant guardian of said Alvin J. Beller and the other heirs of Jacob Beller, deceased, rent for the use and occupation of said premises from and after May 1, 1910, until said Otto Hunrath shall vacate said premises as aforesaid.

"(*f*) That in case the court should find that there had been no breach of the covenants of the lease from said Jacob Beller to said Louis M. Knauss, the term of which lease extends from May 1, 1910, to April 30, 1920, and that said Otto Hunrath was rightfully in possession of said premises under said lease, then that the said defendant, the State Street Land Company, may be forever restrained by an order and injunction of this court from in any way interfering with the payment by said Otto Hunrath and the acceptance by said heirs of Jacob Beller, deceased, of any rent due from said Otto Hunrath to said

heirs of Jacob Beller, deceased, and from making any claim against the said heirs of said Jacob Beller, deceased, to the possession of or for a lease of said premises during the occupancy thereof of the said Otto Hunrath for the term of said lease from May 1, 1910, to April 30, 1920.

"(g) That complainant may have such other or further relief in the premises as shall be agreeable to equity and good conscience."

Three defendants being heirs of Jacob Beller have answered, and asked the same relief that is asked in the bill. Two heirs and Hunrath and the State Street Land Company have demurred to the bill, upon the following grounds:

"(1) That the complainant has a full, complete, and adequate remedy at law.

"(2) That the complainant has not shown any right to compel interpleading of the defendants.

"(3) That complainant has such an interest in the subject-matter of the suit that it has no right to compel the defendants to interplead.

"(4) That there is no such privity between the parties as would entitle the complainant to compel the defendants to interplead.

"(5) That the subject-matter of said suit results from the voluntary actions of the complainant and Jacob Beller, through whom it holds, and therefore complainant is not entitled to compel defendants to interplead.

"(6) That complainant and the parties by, through, and under whom it claims are under contractual relations with the defendant Hunrath which are independent of any contract complainant has with any of the other defendants.

"(7) That under such independent contractual relations with Hunrath the duty of the complainant and the other Beller heirs might be determined without a decision of the controversy between the defendant Hunrath and the other defendants claiming a duty from the complainant.

The demurrer was sustained in the circuit court, and complainant has appealed.

Under the allegations of this bill we must conclude that Beller reserved the right to the rent to be collected from

Hunrath so long as his (Hunrath's) rights should not be forfeited, and from the State Street Land Company, under an exactly similar lease to be given to them in case of such forfeiture, after the execution of its contract.   Hunrath claims that his lease has not been forfeited, and, so far as we can learn from the bill, no steps have been taken to declare it forfeited, whether Hunrath's covenants have been broken or not.   On the other hand, we are informed by the bill that the State Street Land Company claims that it is entitled to the lease upon the ground that Knauss executed to Hunrath an assignment of his leases without the assent of Beller, and put him in possession of the premises, whereby Hunrath is unlawfully in possession, and it threatens to sue the widow and heirs of Beller for damages for breach of Beller's contract to evict Hunrath, and execute a lease to the State Street Land Company. Now Hunrath is making no complaint.   On the contrary, he has regularly tendered performance by paying rent and holding his possession.   In fact, it does not appear that complainant or any of the defendants have demanded possession or ever claimed a forfeiture.   Complainant has refused to accept rent, but only to prevent its being said that it has recognized Hunrath's title.   We cannot fail to see from the prayer that the main object of the bill is to settle a triangular dispute and obtain a decree giving relief between all the parties, so that the complainant and those defendants in sympathy with him may be protected against being defeated by both Hunrath and the State Street Land Company.   We understand that Hunrath will claim, should proceedings to convict him be brought, that, although Beller did not consent in writing to the lease made by Knauss, he waived his right to a forfeiture by recognizing him as a subtenant entitled to the premises, and repeatedly received rent from Hunrath, and that he has always kept the covenants of the lease to Knauss. On the other hand, we understand the position of the State Street Land Company to be that its contract was an agreement that Hunrath's sublease, not being assented to

in writing by Beller, was subject to forfeiture at any time, that Beller agreed to forfeit it and evict Hunrath, and that it (the land company) had a right of action against the Beller heirs for damages for the failure to do these things.

Three grounds are given as a justification for filing this bill:

(1) That it is proper as a bill of interpleader.
(2) It will avoid a multiplicity of suits.
(3) The guardian needs and asks instruction as to its management of the ward's estate.

Interpleader. Were Beller living, a bill of interpleader would not lie in this case. We understood counsel to concede this, but whether he intended to do so or not the case of *Sprague* v. *Soule*, 35 Mich. 35, settles that question. Each of these two defendants—*i. e.*, Hunrath and the land company—is claiming express contract rights from Beller, who would be in no proper sense a stakeholder. The definition of "a bill of interpleader," as given by Adams' Equity, p. 202, is as follows:

"A bill of interpleader is a bill filed for the protection of a person from whom several persons claim legally or equitably the same thing, debt, or duty, but who has incurred no independent liability to any of them, and does not himself claim an interest in the matter. The equity is that the conflicting claimants should litigate the matter amongst themselves, without involving the stakeholder in their dispute."

The author adds:

"It is apparent from the definition already given that, in order to originate the equity of interpleader, three things are essential, viz.: (1) That the same thing, debt, or duty be claimed by both the parties against whom relief is asked; (2) that the party seeking relief have incurred no independent liability to either claimant; and (3) that he claim no interest in the matter. * * * The party seeking relief must have incurred no independent liability to either claimant."

See *Stephenson* v. *Burdette*, 10 L. R. A. ( N. S.) 758, note III, for a discussion of this subject. Thus in *Stanley* v. *Roberts*, 8 C. C. A. 305, s. c. 59 Fed. 836, the court said:

"The reason for, and the necessity of a strict enforcement of, the second rule is obvious. Parties claiming title to the thing in dispute ought not to be, and cannot properly be, compelled to litigate any rights but those in controversy between themselves. If the holder of the subject-matter in dispute has placed himself under an independent personal obligation to one or more of the claimants, by which his liability to deliver the thing or pay the debt in question may be determined without a decision of the controversy between the claimants, it is plain that no litigation between the latter can ascertain the rights of the holder or debtor upon his personal obligation. Nor does the fact that the latter claims that his personal agreement was obtained by the fraud or misrepresentation of the obligees relieve the embarrassment, or except the case from this rule. The question presented by such a claim arises entirely between the parties to the personal obligation of the holder or debtor. It is nothing to the other claimants, nor were they interested in, or proper parties to, the litigation over it. It would be a monstrous proposition that one who makes agreements with two persons to sell and deliver the same article to each of them could bring the article into court and compel the two purchasers to litigate the question which had the better right to the thing, before either could recover it of him, or that a tenant of the owner could take a second lease of the same premises from one claiming title to them, and then compel the real owner and the pretended owner to litigate, not only the title to the premises, but the validity of the leases the tenant himself had taken, before either lessor could recover his rent. If such a proposition could be sustained, any tenant might treat his landlord to as many lawsuits as he could obtain leases of his premises."

The foregoing quotations appear to us to sufficiently show that a bill of interpleader would not lie at the suit of Beller. The fact that the rights of Beller are now divided among several heirs who do not agree as to the policy to be pursued by the Beller interests against Hunrath and

the land company should make no difference, and Hunrath has a right to make his defense against eviction without the embarrassment of a complication growing out of a possible breach of contract on the part of the Bellers, should he prevail, and, on the other hand, the State Street Land Company's claim of a breach of contract might suffer if in any way dependent upon a forfeiture of Hunrath's rights under the lease. Neither party should be subjected to the annoyance, expense, and danger of litigating claims of others against the Bellers growing out of different contracts.

**Multiplicity of Suits.** We have said that the avoidance of a multiplicity of suits is one ground given for the filing of this bill, which is perhaps too broad a statement. It may be more accurate to say that counsel argue it as a reason for filing the bill. That the avoidance of many suits may in certain kinds of cases justify the filing of a "bill of peace" is undoubted. We fail in an effort to find the subject of multiplicity of suits treated under any other head in Adams' Equity, and "multiplicity of suits" is not mentioned as a title in the index; but on page 199 the subject is mentioned, as follows:

"A bill of peace is a bill filed for securing an established legal title against the vexatious recurrence of litigation, whether by a numerous class insisting on the same right or by an individual reiterating an unsuccessful claim. The equity is that, if the right be established at law, it is entitled to adequate protection.

" Bills of peace of the first class are those where the same right is claimed by or against a numerous body, as, for example, where a person claims tithes against his parishioners, or the parishioners allege a *modus* against the parson, where the lord of a manor claims a right against the tenants, or the tenants claim a common right against the lord, or where the owner of an ancient mill claims service to his mill from all the tenants of a particular district. In all these cases the only form of procedure at common law would be that of a separate action by or against each parishioner or tenant, which would only be binding as between the immediate parties, and would

leave the general right still open to litigation. In order
to remedy this evil, a suit may be sustained in the court of
chancery, in which all parties may be joined, either indi-
vidually, or as represented by an adequate number. If
any question of right be really in dispute, it will be re-
ferred to the decision of a court of law, and, when the
general right has been fairly ascertained, an injunction
will be granted against further litigation. If particular
individuals have special grounds of claim, those claims
will be left untouched.

"In order to originate this jurisdiction, it is essential
that there be a single claim of right in all arising out of
some privity or relationship with the plaintiff.

"A bill of peace therefore will not lie against independ-
ent trespassers, having no common claim, and no appear-
ance of a common claim, to distinguish them from the
rest of the community, as, for example, against several
booksellers who have infringed a copyright, or against
several persons who, at different times, have obstructed a
ferry. For, if a bill of peace could be sustained in such a
case, the injunction would be against all the people of the
kingdom."

Also:

"Bills of peace of the second class are those where a
right, claimed by an individual, is indefinitely litigated
by him without success. The necessity for bills of this
class originates in the nature of the action of ejectment,
which is based on a fictitious dispute between fictitious
parties, so that the rights of the real litigants are only in-
directly tried. The consequence of this is that the result
of the action is not conclusive, but that fresh actions may
be repeatedly brought, and the successful party harassed
by indefinite litigation. In order to remedy this oppres-
sion a jurisdiction has been assumed by the court of
chancery, and a bill will lie, after repeated trials at law
and satisfactory verdicts, to have an injunction against
further litigation. The right to this jurisdiction was form-
erly much questioned. Lord Cowper, in a celebrated case,
where the title to land had been five times tried in eject-
ment, and five uniform verdicts given, refused to exercise
it; but his decision was overruled by the House of Lords."

Also:

"No bill of peace will lie where the rights and respon-

sibilities of the defendants neither arise from nor depend upon, nor are in any way connected with, each other. *Randolph* v. *Kinney*, 3 Rand. (Va.) 394. See *Miller* v. *Grandy*, 13 Mich. 540; *Wilkerson* v. *Walters*, 1 Idaho, 564. An allegation that the defendants have fraudulently confederated to harass the plaintiff with suits will not uphold an injunction when the defendants claim adversely to each other. *McHenry* v. *Hazard*, 45 Barb. (N. Y.) 657. An injunction to restrain a multiplicity of suits will not lie when the court of law is competent to give relief by consolidating them. High on Injunctions, § 62; *Washburn's Appeal*, 105 Pa. 480."

This bill shows that the Beller heirs are liable to litigation against two different persons arising upon two different contracts not necessarily in any way dependent upon each other. They are apprehensive that they may suffer successive defeats in these, and this bill is apparently expected to enable the complainant to safely recognize Hunrath's lease, or, on the other hand, obtain a decree for his eviction, and thereby enable it to carry out its contract with the State Street Land Company and avoid a suit for damage. We have already seen that the latter's right to damages for the breach of its contract does not necessarily depend upon complainant's right to enforce a forfeiture, and if a bill of peace would be otherwise appropriate— which we do not intimate—the same reason exists for denying its use here, that we have given with regard to a bill of interpleader. These parties have a right to try their claims separately, and have them decided on their own merits without reference to the others' rights under the separate and respective contracts.

Instruction to the Guardian. It is conceded by counsel that equity will entertain an application from a trustee for the construction of writings in certain cases. It is a common practice to file bills for the construction of wills, but we are not asked to construe any writing. What complainant evidently seeks is to get a decision between Hunrath and the State Street Land Company, and between the Beller heirs and them, which shall bind all, and

would require the determination of fact as well as law. We have not been referred to any case which justifies the practice that we are asked to sustain in this case, nor have we been able to find one which supports complainant's claim.

The order is affirmed, and cause remanded for further proceedings.

BIRD, MOORE, BROOKE, and STONE, JJ., concurred.