CAROLINA POWER & LIGHT COMPANY v. MERRIMACK MUTUAL FIRE INSURANCE COMPANY; SENTINEL FIRE INSURANCE COMPANY; LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY; NORTH BRITISH & MERCANTILE INSURANCE COMPANY; TRAVELERS FIRE INSURANCE COMPANY; UNITED STATES FIRE INSURANCE COMPANY: WESTCHESTER FIRE INSURANCE COMPANY; AETNA INSURANCE COMPANY; CITIZENS INSURANCE COMPANY; CAPITAL FIRE INSURANCE COMPANY; LITITZ MUTUAL INSURANCE COMPANY OF LITITZ, PENNSYLVANIA; ALLIANCE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY; GREAT AMERICAN INSURANCE COMPANY; THE CENTRAL MANUFACTURERS MUTUAL INSURANCE COMPANY; THE PREFERRED MUTUAL FIRE INSURANCE COMPANY; MIDDLESEX MUTUAL FIRE INSURANCE COMPANY; BRITISH AMERICAN ASSURANCE COMPANY; LONDON & LANCASHIRE INSURANCE COMPANY; ROCHESTER AMERICAN INSURANCE COMPANY; EAST & WEST INSURANCE COMPANY; NORTHERN ASSURANCE COMPANY; ST. PAUL FIRE & MARINE INSURANCE COMPANY; SUN INSURANCE OFFICE, LIMITED; PENNSYLVANIA LUMBERMEN'S MUTUAL FIRE INSURANCE COMPANY; FIREMEN'S INSURANCE COMPANY; NORTH RIVER INSURANCE COMPANY; AMERICAN NATIONAL FIRE INSURANCE COMPANY; AUTOMOBILE INSURANCE COMPANY; ATLANTIC MUTUAL FIRE INSURANCE COMPANY OF SAVANNAH; WASHINGTON COUNTY FIRE INSURANCE COMPANY—INSURERS—AND C. J. FLEMING; MRS. C. B. CHURCH; ROBERTSON CHEMICAL CORPORATION; MRS. W. T. CARTER; G. R. GARRETT COMPANY, INC.; MOON THEATES, INC.; ISEAH A. WOOD; T. J. HARRINGTON; J. H. PARK; E. M. MOODY; WEAVER FERTILIZER COMPANY, INC.; C. B. TURNER; R. E. TANNER; R. F. READ; ROBERT F. TURNER; MRS. BEATRICE K. REAVIS: MRS. BESSIE KITTLE; MRS. ELLA W. BROWN; MRS. JANIE H. KERNER, GUARDIAN OF SALLIE EUGENIA KERNER, A MINOR; SALLIE EUGENIA KERNER, MINOR; HENDER-

SON TOBACCO BOARD OF TRADE, INC.; THOMAS G. HORNER; HENRY T. MORRIS; R. W. BOYD; W. E. HICKS, INSUREDS, AND MURRAY ALLEN; T. P. GHOLSON, AND A. W. GHOLSON, JR.

(Filed 2 December, 1953.)

**1. Injunctions § 4f—**

A bill of peace will lie for relief against a multiplicity of suits in those instances where the suitors' rights in a common cause may properly be asserted in one action.

**2. Pleadings § 19c—**

Upon demurrer, a pleading will be liberally construed. G.S. 1-151.

**3. Same—**

A demurrer admits for its purpose the truth of all relevant facts properly pleaded and all inferences of fact properly deducible therefrom, but it does not admit conclusions of law by the pleader nor deductions advanced *arguendo* in support of its allegations of fact.

**4. Injunctions § 4f—Bill of peace will not be granted in independent suit when the relief is available in pending action.**

Plaintiff alleged that some twenty actions were pending against it to recover for separate losses sustained in the same fire upon allegations that the fire was caused by plaintiff's negligence, and that one suit had already been determined in its favor adjudging that it was not negligent. Plaintiff brought this action to restrain the prosecution of these twenty actions on the ground that the parties had agreed to harass plaintiff by prosecuting each suit separately and that the former judgment constituted an estoppel and *res judicata.* *Held:* Plaintiff could assert the defense of estoppel by judgment and could move for consolidation of all the actions in the next pending action brought to trial, and therefore it may not maintain an independent suit in equity to restrain the prosecution of the actions.

**5. Judgments § 32—**

Ordinarily a judgment in a former action constitutes an estoppel as *res judicata* in a subsequent action only if there be identity of parties, of subject matter and of issues, and it is also required that the estoppel be mutual.

**6. Same—**

As an exception to the general rule that there must be identity of subject matter and issues in order for a former judgment to constitute an estoppel in a subsequent action, the former judgment may constitute an estoppel whenever it necessarily affirms the existence of a particular fact, and such fact is again in issue between the parties or their privies, even though such fact comes in question incidentally in relation to a different matter.

**7. Same—**

The general rule that there must be identity of parties in order for a former judgment to constitute an estoppel in a subsequent action embraces not only the actual parties to the action but also parties in privity with them, and is subject to the further exception that a person not actually a party to the judgment will be bound thereby if he openly and actively

assumes and manages the defense of the action and has a proprietary or financial interest in the judgment or in the determination of a question of fact or of law with reference to the same subject matter or transaction, provided plaintiff has knowledge thereof so that the estoppel will be mutual.

**8. Same—Allegations held insufficient to show estoppel by judgment as against other parties whose property was damaged by same fire.**

Plaintiff's allegations were to the effect it furnished electricity to a certain warehouse, that fire broke out in the warehouse, resulting in destruction of the warehouse and damage to the property of some twenty other persons in the vicinity, that the insurer of each piece of property damaged executed a "loan" to each owner under an agreement that they should prosecute actions for the losses against plaintiff and repay the loans, without interest, only in the event and to the extent of recovery against plaintiff, giving insurers control of the litigation, and that the cases should be tried separately. Plaintiff further alleged that in the action by the owner of the warehouse final judgment was rendered in its favor establishing that plaintiff was not guilty of negligence. Plaintiff instituted this action to enjoin the further prosecution of the twenty separate actions, asserting that the former judgment constituted an estoppel by *res judicata* of the pending actions. *Held:* Each owner was entitled to maintain a separate action, and there being no allegation that the several claimants, either directly or through their insurers, participated in the trial of the first case or that they openly and actively assumed and managed the prosecution thereof, but at most only agreed as to the case which should be tried first, the facts are insufficient to establish that the other claimants were in privity with the plaintiff in the first action or that an estoppel based thereon would be mutual, and therefore demurrer to the complaint was properly sustained.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Williams, J.,* March Term, 1953, of VANCE. Affirmed.

This is a suit in the nature of a bill of peace to restrain the further prosecution of 20 civil actions now pending in the Superior Court of Vance County, on the ground (1) that the causes of action therein alleged have been heretofore determined as *res judicata* by the judgment in another action for the same cause on the same facts, or (2) that equity should intervene to prevent a multiplicity of suits which would result from attempting to try each of said actions separately.

Questions relating to the subject of this action have heretofore been considered by this Court, and the decisions thereon are reported in *Fleming v. Light Co.,* 229 N.C. 397; *Fleming v. Light Co.,* 230 N.C. 65, and *Fleming v. Light Co.,* 232 N.C. 457. Out of the facts set forth in those cases the present action arose.

The plaintiff has set out its alleged cause of action herein in a complaint containing 55 paragraphs and covering with the exhibits attached

more than 50 printed pages. The pertinent facts alleged, however, may be summarized as follows:

On 22 February, 1947, the tobacco warehouse in Henderson known as the High Price Warehouse was totally destroyed by fire.

This building and all electrical facilities were under the exclusive control of the owner, C. J. Fleming, and Carolina Power & Light Co., the plaintiff herein, furnished the electric current to the building. The fire originated inside the building, but no one knows how, when, or the point in the warehouse where the fire began, and the plaintiff alleges the fire was of unknown origin, and if caused by electricity it was not due to any negligence on the part of the plaintiff, and there was no justifiable basis for allegations of negligence.

On 28 October, 1947, C. J. Fleming instituted action against this plaintiff to recover damages for the loss of the building alleging negligence on this plaintiff's part. This cause finally came to trial in the Superior Court of Vance County June, 1950, and the jury for its verdict found that the warehouse was not destroyed by the negligence of the plaintiff. From judgment on the verdict Fleming appealed to the Supreme Court, and at Fall Term, 1950, this Court found no error in the trial, and the *Fleming* case was finally terminated.

On 20 February, 1950, 20 separate actions for loss of property in the same fire were instituted against this plaintiff. With the plaintiff in each of these actions was joined one of the insurers of that particular property, and Murray Allen or Gholson & Gholson, or both, were named as attorneys. The complaint in each of the 20 cases contained substantially the same allegations of negligence against this plaintiff. All these cases were pending on the civil issue docket of Vance Superior Court at the time the *Fleming* case was tried on its merits in June, 1950. All the individuals and insurance companies named as plaintiffs in these 20 actions and their attorneys have been made parties defendant in this action.

It is alleged that the several insurance companies named as parties plaintiff with the insured in these 20 actions (defendants herein) did not pay to their respective insureds the insurance provided by the policies, but instead each insurer loaned to each insured an amount equal to the insurance money due under the policy, without interest, and this was under and pursuant to an agreement entitled "Loan Receipt." These loan receipts were repayable only in the event of recovery from the person liable for the loss of his property. By this loan receipt each insured, called "borrower," agreed to cooperate with his insurance company to promptly present claim and commence and prosecute suit against the person or corporation through whose negligence the loss was caused, and thereby appointed the manager or agent of the insurance company his agent and attorney with irrevocable power to collect his claim and to

prosecute in his name all legal proceedings to enforce such claim. It was alleged that in making these loans the insurance companies were represented by certain named insurance adjusters.

It is alleged that the purpose and effect of this loan receipt arrangement was and is to vest the representatives and agents of these insurance companies with exclusive and irrevocable dominion over the claims and causes of action subsequently sued on in the 20 suits referred to; and that the insurers thus acquired the right to control the handling of said claims and the litigation in respect thereto.

It is further alleged that by means of these "loan receipts" the insurance companies, acting through their agents and representatives placed said claims upon which the loans were made in the hands of Murray Allen and Gholson & Gholson, attorneys, under agreement which vested them with an interest in said claims.

It is further alleged that all the claims have been thus pooled and combined, and that the parties and attorneys have agreed to cooperate and work together in all things for the collection of these claims, all to the effect as if all of said claims had been originally joined together; and that since said time they have worked together in joint and common undertaking to force collection from Carolina Power & Light Co. by this litigation.

It is further alleged that in resorting to said loan receipt arrangement all the defendants acted in concert and for common purpose of collecting said claims from this plaintiff jointly instead of each proceeding independently, and have vested the insurers with control over the litigation based thereon.

It is further alleged that this combination and concert of action created a joint enterprise which merged the previously existing individual or independent quality of said claims into a pool or common interest for the common use and benefit of the entire group, in the suits against Carolina Power & Light Co. as a common adversary, and that the insurers and their agents and attorneys have agreed and confederated among themselves upon a common pursuit of this plaintiff as a common adversary.

It is alleged that learning that resort to litigation was necessary to collect these claims the defendants agreed among themselves to select from the entire group of claims one on which they were most likely to recover, as a test case to procure an adjudication that the fire was due to Carolina Power & Light Co.'s negligence, and as a result the claim of C. J. Fleming was selected by the defendants pursuant to the plan evidenced by the loan receipt.

It is further alleged that the defendants in furtherance of this plan brought to trial only the case of Fleming, and on 20 February, 1950, instituted the 20 separate suits referred to. Efforts to consolidate all these

cases for trial proved unavailing due to the active opposition of these defendants and their attorneys. It is alleged this was done to vex and harass this plaintiff by multiplicity of litigation of the same question.

It is further alleged that by reason of the acts and conduct of defendants in resorting to the loan receipt arrangement and the vesting of control of said causes of action in the defendant insurers and their attorneys, together with the selection by them of the *Fleming case* as the test case for the common benefit of all to determine the alleged negligence of this plaintiff, the individual and independent character of said claims became merged and lost in the common enterprise, creating a community of interest in all the defendants in the *Fleming case*. So that the judgment in the *Fleming case* has been rendered *res judicata* and constitutes an estoppel, preventing further proceeding in the premises by the defendants against this plaintiff.

It is alleged the defendants intend to bring said 20 cases to trial one by one and thereby carry out their joint purpose to endlessly harass and vex the plaintiff with a multiplicity of actions. To prevent this the plaintiff invokes the aid of equity on the ground that by reason of the matters herein set out the final determination of the *Fleming case* is in equity binding upon all defendants and the attempt to harass and vex the plaintiff by trying these 20 cases one by one should invoke the intervention of equity.

Plaintiff prays that the defendants be restrained from further proceeding against this plaintiff for that they are estopped by the judgment in the *Fleming case;* or in the alternative that defendants be restrained from further proceeding by virtue of the agreement for control vested in the agents of the defendant insurance companies to harass and vex the plaintiff by a multiplicity of actions for the same cause which has heretofore been finally determined by the verdict of the jury in the *Fleming case.*

To this complaint the defendants demurred on the ground (1) that the facts alleged are insufficient to invoke the jurisdiction of a court of equity; (2) that other actions are now pending in the Superior Court of Vance County involving the same subject, in which the plaintiff can move for the relief sought in this action; and (3) that the complaint does not state facts sufficient to constitute a cause of action.

The demurrer was sustained, and the action dismissed. The plaintiff appealed.

*A. A. Bunn, Kittrell & Kittrell, and Perry & Kittrell, Henderson, N. C.; E. S. DeLaney, Jr., Charles F. Rouse, and A. Y. Arledge, Raleigh, N. C., for plaintiff, appellant.*

*Murray Allen and R. P. Upchurch for defendants other than C. J. Fleming, R. E. Tanner, R. F. Read, Robert F. Turner, T. P. Gholson, and A. W. Gholson, Jr.*

*Gholson & Gholson* for defendants C. B. Turner, R. E. Tanner, Robert F. Turner, and R. F. Read.

*William T. Joyner* and *Gholson & Gholson* for defendants C. J. Fleming, T. P. Gholson, and A. W. Gholson, Jr.

DEVIN, C. J.   The plaintiff labels its action as one in the nature of a bill of peace. The function of a bill of peace is well recognized in courts of equity. It is a proceeding instituted in that court to invoke the aid of its equitable jurisdiction on behalf of one who wishes to be made secure in his rights against the continued recurrence of vexatious litigation of unsuccessful claims, or to prevent a multiplicity of suits. *Detroit Trust Co. v. Hunrath,* 168 Mich. 180 (192). It is a bill in equity to procure repose from perpetual litigation, and for relief against a multiplicity of suits in those instances where the suitors' rights in a common cause may properly be asserted in one action. "A bill of peace is an equitable remedy to prevent vexatious litigation which might arise either by the same plaintiff prosecuting several actions against the defendant for claims involving the same question, or where there are several claimants prosecuting separate actions against the defendant upon a common liability." McIntosh 1107; Adams Equity 199.

To the complaint the defendants have interposed demurrers on the ground that the complaint does not state facts sufficient to constitute a cause of action, or to invoke the jurisdiction of a court of equity.

Both by statute, G.S. 1-151, and the uniform decisions of this Court it is required that a pleading shall be given liberal construction in order to determine its sufficiency and its effect. *Hollifield v. Everhart,* 237 N.C. 313, 74 S.E. 2d 706; *Bumgardner v. Fence Co.,* 236 N.C. 698, 74 S.E. 2d 32; *Mills Co. v. Shaw,* 233 N.C. 71, 62 S.E. 2d 487; *Ins. Co. v. McCraw,* 215 N.C. 105, 1 S.E. 2d 369; *Blackmore v. Winders,* 144 N.C. 212, 56 S.E. 874. The office of a demurrer is to test the sufficiency of the complaint, admitting for that purpose the truth of all relevant facts well pleaded and such inferences of fact as may properly be deduced therefrom. But the demurrer does not admit conclusions of law asserted by the pleader. *McKinney v. City of High Point,* 237 N.C. 66, 74 S.E. 2d 440; *Leonard v. Maxwell, Comr.,* 216 N.C. 89, 3 S.E. 2d 316; *Mills Co. v. Shaw, supra.* Nor does the demurrer admit the deductions which may be drawn or reasons advanced *arguendo* in support of the allegations of fact upon which the complaint is based.

The demurrer admits the following material facts:

That the 31 insurance companies, which had insured the owners of the Fleming warehouse and adjacent property against loss by fire, immediately following the destruction of this property by fire 22 February, 1947, secured the cooperation of the insureds by means of the "loan receipts"

described in detail in the complaint. In accordance with the terms of these loan receipts, the insurance companies paid to each insured the amount covered by his policy in the form of a loan and took from him a loan receipt whereby the insured agreed to repay the amount, without interest, in the event and to the extent of recovery from the person or corporation liable for the loss of the property, and as security the insured pledged with his insurance company his claim against such person or corporation. Each insured agreed to cooperate with the insurance company insuring his property and to appoint its representative with power to control litigation thereon in his name. It was alleged that pursuant to the agreement evidenced by the loan receipt certain named representatives of the insurance companies were given control over the litigation which the plaintiff alleged was agreed to be undertaken to fix the Carolina Power & Light Co. with liability for the loss sustained.

It is alleged that pursuant to this agreement the same counsel were employed, and that it was agreed that a test case be chosen, one in which they were most likely to prevail; that accordingly the *Fleming case* was chosen in the hope that a successful outcome would secure settlement of all claims by the Power & Light Co., the other 20 cases being held in reserve; that owing to delays caused by appeals to this Court the *Fleming case* was not tried until June, 1950; that actions were instituted in the other 20 cases 20 February, 1950, with same counsel, and containing identical allegations charging the Light Co. with negligently causing the fire. In each case, with the insured, was joined as plaintiff the insurance company which had insured his property.

The complaint alleges that in spite of the efforts of the plaintiff Carolina Power & Light Co. to have these 20 cases consolidated and brought to trial, all are still pending· on the civil issue docket of Vance Superior Court, though more than six years have elapsed since the fire, and the *Fleming case* was finally disposed of by this Court three years ago. It is further alleged that the defendants have agreed to bring up one of these cases at a time, and that the next one they will present will be that of Mrs. C. B. Church and her Insurer; that it will require many years in the regular course to dispose of these cases in view of the limited number of terms of Vance Superior Court; that in the meantime by reason of the contingencies inherent in the lapse of time the means of proof will be greatly hindered.

The demurrer admits the facts properly pleaded but does not admit the conclusions and arguments advanced by the plaintiff in support of its plea for the exercise of the equitable jurisdiction of the Court to restrain the prosecution of pending actions at law.

The question is thus presented whether a court of equity should intervene in actions at law pending and at issue to restrain further proceed-

ings therein upon the facts here alleged. Are they sufficient to invoke this remedy, or is the relief sought obtainable in the present actions at law?

It may be noted that when the first appeal to this Court in the *Fleming case* was heard (reported in 229 N.C. 397) no action other than that of Fleming had been instituted to recover against the Light Co. for losses sustained. But in that case the Carolina Power & Light Co. moved that the insurance companies, insurers of the several property owners whose property had been destroyed in the fire, be made parties (notice of claims having been given), and in support of that motion the Light Co. urged substantially similar grounds as those upon which the present action is based. We quote from *Justice Seawell's* opinion in that case:

"The gravamen of the motion lies in the additional argument that all the adverse parties in interest have pooled their demands and entered into a combination to fix the liability on it in a test suit,—in a sort of squeeze play,—intending, if successful, that the judgment in this action shall be thereafter pleaded as *res judicata*. By virtue of this combination it is argued, the defendant is threatened with the harassment of a multiplicity of suits involving the same liability; and it is urged that because of the involvement of the principle of subrogation the action is of an equitable nature and that it is within the power and is the duty of the Court, in the exercise of its equitable jurisdiction, to protect the rights of the defendant and relieve it from the embarrassment of a multiplicity of actions by requiring that all the matters be heard in a single action." *Fleming v. Light Co.,* 229 N.C. 397, 50 S.E. 2d 45.

As no other action had then been brought this contention of the Power & Light Co. was not regarded as tenable. The motion to make the insurance companies parties in the *Fleming case* was denied, but on rehearing this order was modified so as to bring in as parties the five insurance companies which had made payments to Fleming on account of his loss.

The plaintiff in this action has undertaken the unusual method of an independent suit in equity to restrain proceedings in actions at law which are now pending in the Superior Court of Vance County. It is an effort to determine in advance a question which it is alleged will prove decisive of those cases. While the long arm of equity is available to prevent vexatious litigation and to procure repose for one who wishes to be made secure in his rights against the harassment of a multiplicity of actions for the same cause which has heretofore been determined in his favor, we doubt that the Court should be called upon to exercise its jurisdiction by an independent suit when apparently the same facts and the same pleas may be set up in the actions at law which are now at issue. It is alleged that the defendants, in the prosecution of their plan to try these 20 actions one by one, propose next to bring to trial the case of Mrs. Church. If so,

it would seem to be open to this plaintiff in that action to interpose the pleas of *res judicata* and estoppel as a defense to that action and thus to determine the question for all subsequent actions in as ample a manner as is now sought to be done in this independent suit.

Nor would a court of equity be required to entertain an independent suit to require the consolidation of the 20 actions at law referred to in the complaint, for the reason that the defendant in those actions (the complainant here) has a right to move in any one of them for a consolidation of all those cases for trial. 19 A.J. sec. 82. Each of the persons whose property was destroyed by the fire, with or without the joinder of his insurance company, was entitled to institute a separate action for a separate wrong. A complaint embracing the claims of two or more different persons whose separate property had been destroyed, though by the same fire, would have been demurrable. "Two or more persons injured by the same wrongful act must sue separately, since each injury is a separate cause of action." McIntosh, sec. 230; *Fleming v. Light Co.*, 229 N.C. 397 (405), 50 S.E. 2d 45. Equity could not interfere to prevent these suits on account of their number. Nor would allegation that defendants had agreed to so handle these cases as to harass and vex the complainant entitle it to equitable relief when the same relief, to wit, consolidation, is available in the actions at law. *Boston & Maine Railroad v. D. & H. Co.*, 268 N.Y. 382. There is a distinction between a bill of peace of which equity will entertain jurisdiction, and a suit when the object is merely to procure a consolidation of actions which can be attained at law. High on Injunction, sec. 62; Adams Equity 199; *Tribette v. Ill. C. R. Co.*, 70 Miss. 182, 19 L.R.A. 660. In *Fleming v. Power & Light Co.*, 229 N.C. 397, 50 S.E. 2d 45, it was said, "when fire destroys the property of a number of parties, each injured party has a separate and independent cause of action." 19 A.J. sec. 82; *Southern Steel Co. v. Hopkins*, 174 Ala. 465; *Pittsburgh & W. V. Ry. Co. v. U. S.*, 6 F. 2d 646.

In *Georgia Power Co. v. Hudson*, 49 F. 2d 66, 75 A.L.R. 1439, where many suits were instituted against the Power Co. for damages caused by a dam, the Court said "that community of interest among the several parties in the questions of law and fact involved is not sufficient to confer jurisdiction upon the court to enjoin the prosecution of such actions, though they be brought against the same defendant and involve the same state of facts."

We do not think the allegations of the complaint as detailed, or the conclusion sought to be deduced from the facts alleged are sufficient to invoke the aid of equity to restrain these actions at law for the purpose of avoiding a multiplicity of suits.

Should a court of equity entertain jurisdiction in the premises and permanently restrain individuals from maintaining their several and

separate actions against the Carolina Power & Light Co. upon allegation that their property was destroyed by fire through its negligence, upon the ground that the judgment in the *Fleming case* is binding upon all these claimants as *res judicata,* and as an equitable estoppel by judgment?

"It is a principle of general elementary law that the estoppel of a judgment must be mutual." *Bigelow v. Old Dominion C. Min. & S. Co.,* 225 U.S. 111. If the judgment in the *Fleming case* had been in Fleming's favor, would the Carolina Power & Light Co. have been bound as a matter of law in all the other actions instituted by claimants for loss in this fire, without right to defend on other or additional evidence? *Bigelow v. Old Dominion C. Min. & S. Co., supra.*

Estoppel by judgment operates only on parties and their privies. It is a maxim of law that no person shall be affected by any judicial investigation to which he is not a party, unless his relation to some of the parties was such as to make him responsible for the final result of the litigation. An adjudication affects only those who are parties to the judgment and their privies, and gives no rights to or against third parties. 1 Freeman on Judgments, sec. 407. Privies are "persons connected together or having a mutual interest in the same action or thing, by some relation other than that of actual contract between them." Black's Law Dictionary. "To make a man a privy to an action, he must have acquired an interest in the subject-matter of the action, either by inheritance, succession, or purchase of a party subsequent to the action, or he must hold the property subordinately." Ballentine's Law Dictionary. "Any of those persons having mutual or successive relationship to the same right of property." Webster.

In *Elder v. New York & Penn. Motor Express, Inc.,* 284 N.Y. 350, the principle of *res judicata* was stated as follows : "No plea in bar could estop the plaintiff from enforcing his rights since he was not a party to the prior action, unless he came within an exception to the rule of mutuality, which rule is embodied in the principle of *res judicata.* When issues on the same subject-matter have once been settled by litigation between the same parties or their privies, before a court of competent jurisdiction, and the estoppel of the judgment is mutual, that is to say that the other party would be bound if the original decision had been to the contrary, then in the interest of reasonable finality of litigation that decision should be conclusive."

In *Meacham v. Larus & Bros. Co.,* 212 N.C. 646, 194 S.E. 99, a similar question was presented and the ruling of this Court thereon throws light on the case at bar. In that case four persons, Sedberry, Meacham, Alsobrook and Proctor, were passengers in an automobile driven by one Martin and were alleged to have suffered injury as result of collision with the automobile of the corporate defendant, driven by defendant Bivens.

Four separate suits were instituted, and the plaintiffs successfully resisted defendants' motion to consolidate. The *Sedberry case* was tried first, the others joining in as witnesses, and resulted in judgment for the defendants,—nonsuit as to the corporate defendant and verdict in favor of the individual defendant on the issue of negligence. In the *Meacham case* tried next the defendants amended their answer to allege *res judicata* and estoppel by the judgment in the *Sedberry case.* From an adverse ruling below the defendants appealed. In the opinion of this Court written by *Justice Schenck* the question presented was stated as follows: "Is the plaintiff, by reason of the facts admitted and appearing in the record, bound and estopped by the judgment and findings of the jury in the case of *Sedberry v. Larus & Bros. Co. and H. S. Bivens,* and is said judgment *res judicata* as to the negligence of defendant Bivens as between the plaintiff (Meacham) and the defendant here? The answer is 'No.' " The Court in its opinion further noted that Meacham was not a party to the *Sedberry case,* had no legal interest in it, and there was no privity; that ordinarily only parties and privies are bound by a judgment and no estoppel is created. The Court said estoppels must be mutual and one not bound by an estoppel could not take advantage of it; that if the verdict had been in favor of Sedberry, Meacham could not have claimed *res judicata* in his favor. · The Court also suggested that in the trial of the *Meacham case* new and different facts as to the collision might be developed.

In *Falls v. Gamble,* 66 N.C. 455, the headnote accurately summarizes the decision that no estoppel is created by the former judgment against one not a party to the record, though he instigated the trespass, aided in the defense, and employed counsel.

Also in *Rabil v. Farris,* 213 N.C. 414, 196 S.E. 321, it was held that even the father and next friend of his infant child is not estopped, in a subsequent action, by the judgment in a former suit adverse to the infant. Though he was the father there was in law no privity and the former judgment not *res judicata.*

However, in *Leary v. Land Bank,* 215 N.C. 501, 2 S.E. 2d 570, it was held that the judgment in the former action of *Newbern v. Leary* was *res judicata* and a bar to plaintiff's action. It appeared in that case that the administrator of Newbern, an agent of the Land Bank, who had been injured and killed in a collision with the automobile of Leary Bros. recovered judgment against Leary. It was held that this judgment would bar Leary in a suit against the Bank for damage to property in same collision on account of alleged negligence of Newbern, for the reason that Newbern was the agent and *alter ego* of Bank. This was based on the ground of privity between Newbern and the Bank by virtue of their relationship as principal and agent, the negligence of Leary having been determined in the former suit.

Generally, in order that the judgment in a former action may be held to constitute an estoppel as *res judicata* in a subsequent action there must be identity of parties, of subject matter and of issues. It is also a well established principle that estoppels must be mutual, and as a rule only parties and privies are bound by the judgment. These rules are subject to exception.

For instance, in *Current v. Webb,* 220 N.C. 425, 17 S.E. 2d 614, it was said, quoting from 2 Freeman on Judgments, sec. 670 : "There is no doubt that a final judgment or decree necessarily affirming the existence of any fact is conclusive on the parties or their privies, whenever the existence of that fact is again in issue between them, not only when the subject matter is the same, but when the point comes incidentally in question in relation to a different matter, in the same or any other court." On the same principle was based the decision in *Harshaw v. Harshaw,* 220 N.C. 145, 16 S.E. 2d 666; *Hospital v. Guilford County,* 221 N.C. 308, 20 S.E. 2d 332. However, the principle enunciated in these cases should not be extended to justify the holding that the decision in the *Fleming case* established the non-negligence of the Light Co. as a fact once for all determined.

In *Cannon v. Cannon,* 223 N.C. 664, 28 S.E. 2d 240, these and other cases were considered in determining the application of the principle of *res judicata* to the facts of that case, and *Justice Seawell* added this note of caution : "The right of a party to litigate his claim will not be defeated by a roving abstraction which does not meet the exigent standard of notice and hearing—his day in court—guaranteed to him by the Constitution."

In *Tarkington v. Printing Co.,* 230 N.C. 354, 53 S.E. 2d 269, *Chief Justice Stacy* used this language: "Hence, as between the parties there litigant, this matter would seem to be *res judicata* (citing the *Cannon case*). But, of course, the judgment there would not be binding on the plaintiffs here. They were not parties to that suit, and they are entitled to pursue their rights in their own way. *Meacham v. Larus & Bros. Co.,* 212 N.C. 646, 194 S.E. 99."

In *Stansel v. McIntyre,* 237 N.C. 148, 74 S.E. 2d 345, it was held that where the defendants had Mrs. Austin brought in as party defendant for contribution as joint tort-feasor, and set up the judgment in another action between them and Mrs. Austin wherein the same matter (automobile collision) was involved and in which it was determined that Mrs. Austin had been contributorily negligent, it was held that the same question could not again be raised between same parties. *Justice Winborne* in this case collected the authorities on the subject, and stated the principle that the estoppel of judgment must be mutual, and that there must be identity of parties, of subject matter and of issues. True, in the

*Stansel case* it was intimated that the husband of Mrs. Austin, who was not a party, might be bound by the judgment, but this was for the reason that she was operating the automobile as his agent under the family purpose doctrine. *Leary v. Bank, supra.*

Estoppel is the outgrowth of equity, while *res judicata* is based upon legal principles, but both rest upon the maxim that no one ought to be twice vexed for the same cause. *Watson v. Goldsmith,* 205 S.C. 215, 31 S.E. 2d 317.

In order to establish *res judicata* or the equitable principle of estoppel as applicable to the facts of this case it is necessary for the Carolina Power & Light Co. to show that the defendants, while not parties, were privies to the *Fleming case* and hence bound by the judgment, and that the estoppel by judgment in that case was mutual. The able counsel for the plaintiff argues with much earnestness that the judgment in the *Fleming case* should be held binding on defendants here for the reason that under the agreement evidenced by the loan receipts each insured agreed to cooperate with his insurer and thereby appointed the manager or agent of the insurance company with power to collect his claim, and to prosecute in his name all legal proceedings necessary to enforce such claims, and that the effect of this was to vest control of all litigation in the hands of the insurance companies or their representatives, and this agreement included and covered the *Fleming case.* It is argued that each insured in this way participated in control of the *Fleming case* for the assertion and protection of his own interest in a similar case.

The principle invoked is stated in Restatement of Judgments, sec. 84, as follows: "A person who is not a party but who controls an action, individually or in cooperation with others, is bound by the adjudications of litigated matters as if he were a party if he has a proprietary interest or financial interest in the judgment or in the determination of a question of fact or a question of law with reference to the same subject matter or transactions; if the other party has notice of his participation, the other party is equally bound."

The rule is stated in 50 C.J.S. 318, as follows: "A person who is neither a party nor privy to an action may be concluded by the judgment therein if he openly and actively, and with respect to some interest of his own, assumes and manages the defense of the action. A person who is not made a defendant of record and is not in privity with a party to the action may, as a general rule, subject himself to be concluded by the result of the litigation if he openly and actively, and with respect to some interest of his own, assumes and manages the defense of the action, although there is some authority to the contrary." See also Freeman on Judgments, sec. 432; 30 A.J. 960.

Undoubtedly, it must be made to appear that the relation of the defendants to the *Fleming case* was that of privies in order that they may be held bound by the judgment, or that the facts here alleged were sufficient to bring them within the exception pointed out. And equally so there must be some showing upon which to base mutuality in order to support the plea of estoppel.

In the *Fleming case* none of the twenty other claimants had any legal interest. Their property was not involved. They neither won nor lost by it. The status of their cases was unchanged save for the sentimental effect of the verdict. It could hardly be said that Mrs. Church, for instance, the plaintiff in the case next proposed to be tried, controlled the *Fleming case*. At most, it may be said that her insurance company's agent agreed that the *Fleming case* be tried first. All the cases stood upon the same footing, each claimant endeavoring to secure in his own case damages for the loss of his individual property. There is no allegation that these other claimants or any of them, either directly or through their respective insurance companies, participated in the trial of the *Fleming case,* or that they "openly and actively," and with respect to some interest of their own, "assumed and managed" the prosecution of the *Fleming case,* or that Fleming's counsel were not employed by him or that his counsel did other than represent his interest alone in the trial of that case. In this Court counsel who were not of record as counsel for other claimants appeared for Fleming with Murray Allen and Gholson & Gholson. There was no allegation that Fleming was a mere figurehead, and that these defendants were in open and active control of his case. There was no community of property. The gravamen of the plaintiff's complaint is the loan receipt signed by each one of the defendants. A copy of this receipt is attached to the complaint. But this only evidenced that each insured gave authority to his insurance company to prosecute and litigate his claim in his name. It is alleged as a conclusion and deduction therefrom that the insurance companies selected certain representatives to control all the litigation but there is no substantial allegation that as a matter of fact these representatives took charge of the *Fleming case* and openly and actively managed and controlled the trial.

Fleming by signing a loan receipt doubtless gave his insurance companies power to control his litigation with the Power & Light Co., but it is not alleged, nor does the record seem to indicate, that any one exercised control over his lawsuit, save himself and the counsel whom he had employed.

After examination of the complaint and exhibits, and the well prepared briefs filed by counsel, we reach the conclusion that the ruling of Judge Williams in sustaining the demurrer should be and it is

Affirmed.

PARKER, J., took no part in the consideration or decision of this case.